IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:12cv449

| | |
|---|---|
| ECONO-LUBE N' TUNE, INC., | ) |
| Plaintiff, | ) |
| Vs. | ) PRELIMINARY INJUNCTION |
| ORANGE RACING, LLC; and ROBERT TOLLENAAR, | ) |
| Defendants. | ) |

**THIS MATTER** is before the court on plaintiff's Motion for a Preliminary Injunction (#2). In accordance with Rule 65(a)(1), Federal Rules of Civil Procedure, a Preliminary Injunction Hearing was calendared for September 10, 2012, at 2 p.m. Counsel for plaintiff appeared; however, neither counsel for defendants nor defendants appeared or contacted the court.

For the reasons that follow, this court will grant plaintiff's motion for a preliminary injunction enjoining defendants Orange Racing, LLC, and Robert Tollenaar, their agents, servants, employees and attorneys, and all persons in active concert or participation with them who receive actual notice of said Preliminary Injunction, by personal service or otherwise, to cease and refrain, for a period of one (1) year from the date they begin compliance with such covenant not to compete, either directly or indirectly owning, operating, advising, being employed by, or having any interest in any business performing tune-up services, brake services, or lubrication and oil change services within a radius of twenty (20) miles of Center No. 4161.

## FACTS

This motion arises out of defendants' alleged refusal to abide by the post-termination obligations contained in their Franchise Agreement and violations of the *Lanham Act*.

According to plaintiff's Complaint, the relationship between Econo Lube and its franchisees is governed by the terms of the franchise and trademark agreements entered into between them. On

-1-

or about February 11, 2010, Econo Lube entered into an Econo Lube Franchise and Trademark Agreement with Defendant Orange Racing, LLC which granted it the right to operate a Econo Lube Center located at 2501 N.E. 55th Street, Seattle, Washington ("Center No. 4161").

On or about May 8, 2009 Defendant Robert Tollenaar personally guaranteed to Econo Lube that Defendant Orange Racing, LLC would pay and perform all of its obligations under the Franchise Agreement and agreed to be personally bound by and liable for any breach of the Franchise Agreement. Pursuant to the Franchise Agreement, defendants became authorized: (i) to operate an automotive repair center under the trade name "Econo Lube" under the Econo Lube system; (ii) to display the Econo Lube name, logo and marks; (iii) to receive training and access to Econo Lube's methods, procedures and techniques; and (iv) to participate in an established network of licensed automotive repair centers, with a product and service for which Econo Lube has created substantial demand through the maintenance of the highest quality standards and extensive advertising.

Pursuant to the Franchise Agreement, defendants agreed, among other things, to: (i) pay Econo Lube on a weekly basis a franchise fee, or royalty, in an amount equal to 5% of Gross Revenues or $594.27, whichever is greater; (ii) pay Econo Lube on a weekly basis an advertising contribution in an amount equal to one-half percent (0.5%) of Gross Revenues for the prior week (Exhibit 1 at Article 4.5); (iii) pay Econo Lube on a weekly basis a local advertising contribution in an amount equal to five and one-half percent (5.5%) of Gross Revenues of the center's gross revenues for the prior week or $500, whichever is greater; and (iii) furnish Econo Lube with accurate weekly business reports of the center's gross revenues.

During the term of the Franchise Agreement, defendants admitted to having an interest in another competing business offering, among other things, motor vehicle lubrication oil changes and tune-up services to the general public. Defendants' interest in the in-term competing business is in violation of Article 11.1(a) of the Franchise Agreement. On December 23, 2011, Econo Lube sent defendants a Notice of Default notifying them of their violation of Article 11.1(a) of the Franchise

Agreement for their interest in an in-term competitive business. A true and correct copy of the December 23, 2011, Notice of Default is attached hereto as Exhibit 2 and incorporated by reference as if fully set forth herein.

On or about January 3, 2012, defendants abandoned their Econo Lube Center No. 4161 with no intent to reopen. Due to defendants' alleged abandonment of Center 4161, plaintiff has shown to the satisfaction of this court for this proceeding that defendants' Franchise Agreement was terminated effective January 3, 2012. Defendant has also proffered that defendants have engaged in post-termination violations, including: defendants continuing to operate a competing business known as Village Autocare within one (1) mile of Center No. 4161; Village Autocare, was using Econo Lube's federally protected trademark in commerce without authorization. On or about February 9, 2012 Econo Lube sent defendant Robert Tollenaar a cease and desist letter demanding that he cease infringing upon the Econo Lube federally protected logo and marks. On behalf of Village Autocare, Defendant Robert Tollenaar responded to Econo Lube's February 9, 2012 cease and desist letter by removing the infringing activity from the Village Auto Care website.

## ANALYSIS

### I. Standard for Granting Preliminary Injunction

Preliminary injunctions are an extraordinary remedy whose primary function is to protect the status quo and to prevent irreparable harm during the pendency of a lawsuit. In re Microsoft Corp. Antitrust Litigation, 333 F.3d 517, 525 (4th Cir. 2003). A plaintiff seeking a preliminary injunction or temporary restraining order ("TRO") must give notice to the opposing party under Federal Rule of Civil Procedure 65 and establish all four of the following elements: (1) plaintiff is likely to succeed on the merits; (2) plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in plaintiff's favor; and (4) an injunction is in the public interest. Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 129 S.Ct. 365, 374 (2008); Moore v. Kempthorne, 465 F. Supp. 2d 519, 525 (E.D. Va. 2006) ("[t]he standard for granting either

a TRO or a preliminary injunction is the same"). The most recent Supreme Court test was adopted by the Fourth Circuit in The Real Truth About Obama, Inc. v. Fed. Election Comm'n, 575 F.3d 342, 346-47 (4th Cir. 2009), *vacated on other grounds*, 130 S.Ct. 2371, 176 L.Ed.2d 764 (2010)(memorandum opinion), *reissued in pertinent part*, 607 F.3d 355 (4th Cir. 2010), *overruling* Blackwelder Furniture Co. v. Selig Mfg. Co., 550 F.2d 189 (4th Cir. 1977).

In Winter, the Supreme Court emphasized that a plaintiff must demonstrate more than just a "possibility" of irreparable harm and a strong showing of likelihood of success on the merits. Winter, 129 S.Ct. at 375. Plaintiff has established all four requirements needed to obtain a preliminary injunction for both claims.

## II. Discussion

As a preliminary matter, that court notes that the Affidavits of Service indicate service of the Complaint and the court's Order setting the hearing on the Motion for Preliminary Injunction was served on defendants.

### A. Likelihood of Success on the Merits

In order to demonstrate the requisite likelihood of success on the merits, plaintiff must show that it is likely to be able to prove that the non-competition agreement is valid and enforceable. In conjunction with the sale of a business, a covenant not to compete is enforceable under North Carolina law if: 1) it is reasonably necessary to protect the legitimate interests of the person seeking its enforcement; 2) it is reasonable with respect to both time and territory; and 3) it does not interfere with the interest of the public. Bicycle Transit Authority, Inc. v. Bell, 314 N.C. 219, 226 (1985); Jewel Box Stores Corp. v. Morrow, 272 N.C. 659, 662-63 (1968).

#### 1. Reasonably Necessary to Protect Legitimate Interests

Plaintiff satisfies the first prong of the test because its non-compete covenant is necessary to protect multiple valid business interests of plaintiff. In North Carolina, courts have regularly found that these very interests are valid interests that warrant protection by use of a non-compete covenant.

## 2. Time and Territory

The covenant is also reasonable as to time and territory, which satisfies the second prong. The term is only for one year. North Carolina's courts regularly uphold covenants for periods in excess of one year. Triangle Leasing Co., Inc. v. McMahon, 327 N.C. 224, 229 (1990) (two-year period upheld). In addition, covenants in excess of one year that are contained in franchise agreements have been routinely upheld by other federal courts. Grease Monkey Int'l, Inc. v. Watkins, 808 F. Supp. 111, 118, 120 (D. Conn. 1992) (two-year term upheld).

In determining whether the territorial limitation is reasonable, courts look to whether the limitation is reasonably required to secure the protection of the franchisor's legitimate business interests. Triangle Leasing Co., 327 N.C. at 228. The covenant at issue here is reasonable because it does no more than necessary to protect plaintiff from terminated franchisees who use the very information provided to them by plaintiff in order to sell the very products and services that plaintiff has developed in a particular market, and that consumers in that market have come to associate with plaintiff's Marks. This covenant is necessary to allow plaintiff: (1) to protect its confidential and proprietary information and its customer goodwill (customer goodwill is for the trademark and not the specific business), Pappan Enterprises, Inc. v. Hardee's Food Systems, Inc., 143 F.3d 800, 806 (3rd Cir. 1998); (2) to protect its authorized franchisees in the same area as defendants from unfair competition with an ex-franchisee who has learned all of the confidential practices and procedures that make plaintiff's franchisee successful in the marketplace; and (3) to ensure its ability to secure another franchisee at or near the location formerly served by defendants.

A franchise itself is a legitimate interest sufficient to warrant the need of a covenant not to compete for protection. Outdoor Lighting Perspectives Franchising, Inc. v. Home Amenities, Inc., No. 3:11-cv-0567, 2012 WL 137808, at *3 (W.D.N.C. Jan. 18, 2012). This court recognizes, as have other courts, that the basic product the franchisor has to sell is the franchise itself, which typically includes a detailed system of doing business not readily available through independent means. In exchange for securing those benefits from the franchise system, the franchisee agrees

to the covenant not to compete effective upon termination of the franchise license.

The territorial restriction at issue in this case is within a radius of twenty (20) miles of Center No. 4161. North Carolina courts have enforced covenants not to compete with far broader territorial restrictions than those at issue in this case. Forrest Paschal Mach. Co. v. Milholen, 27 N.C. App. 678, 687 (1975) (350 miles territorial restriction enforced). Clearly, the twenty-mile restriction in this case in light of the interests plaintiff seeks to protect.

### 3. The Public Interest

Plaintiff satisfies the third prong of the sale of a business context test because the enforcement of this covenant does not violate public policy. North Carolina's courts have often held that covenants not to compete significantly broader than the one here do not violate public policy. Triangle Leasing Co., Inc., supra.

### 4. Conclusion as to Likelihood of Success on the Merits

Plaintiff has established that it is likely to succeed on the merits of its claim for enforcing the covenant not to compete.

### B. Irreparable harm

As defendants acknowledged in the Franchise Agreement, plaintiff has provided them with valuable knowledge, training and confidential and proprietary information enabling them to establish and operate an automotive center.

In the wake of plaintiff's termination of defendants' franchise for cause, one of plaintiff's top priorities is to re-establish an authorized center in order to retain its goodwill and market share in the market that was formerly served by defendants. Permitting defendants now to violate the covenant not to compete and to use the know-how and training to establish their own, competing automotive repair center in the same service area would result in irreparable harm to plaintiff as it would deprive plaintiff of the customers and the market that it has established over the course of its franchise relationship with defendants, and would thus make it difficult if not impossible for plaintiff to re-establish an authorized, reputable franchise in the same area. Outdoor Lighting Perspectives

Franchising, 2012 WL 137808, at *2. It also follows that absent enforcement, permitting these defendants to ignore and violate their contractually agreed upon covenant not to compete would adversely affect the value of legitimate, law abiding franchisees, thus harming the plaintiff's system as a whole. As Judge Voorhees stated in Meineke Discount Muffler Shops, Inc. v. Vaghani, No. 3:99CV255-V, Order and Preliminary Injunction, at 3-4 (W.D.N.C. Sept. 22, 1999), which dealt with a similar situation, "[a]llowing Defendant to operate a competing automotive business in violation of this covenant allows Defendant to compete unfairly with Plaintiff, thereby causing irreparable harm." Such would have a chilling effect on potential buyers of plaintiff's franchises in the covenanted area from purchasing a plaintiff's franchise, thus reducing the value of those franchises.

The court concludes that plaintiff is likely to suffer irreparable harm in the absence of preliminary relief.

### C. Balance of the Equities

While there is no doubt that defendants would be harmed by the entry of a preliminary injunction, any harm resulting to defendants from the requested injunction would be harm they well should have anticipated. Defendants specifically agreed to the covenant at the very outset of their franchise relationship with plaintiff.

If the court were to permit defendants to continue with a business that violates the agreement, defendants would unfairly benefit from the confidential marketing and operational information that plaintiff previously provided to them as part of the parties' franchise relationship. Accordingly, the significant harm that would result to plaintiff and its authorized franchisees if defendants were allowed to violate this covenant outweighs any harm to defendants from enforcement of this agreed upon covenant.

### D. Public Interest

The public derives substantial benefit from the services provided by those who, like plaintiff, train entrepreneurs and develop new businesses. Communities benefit from the variety, competition

and quality of products and services made available to them through the efforts of franchisors such as plaintiff. If franchisors such as plaintiff are unable to protect themselves and their systems from those who would take unfair advantage of the benefits of exposure to a franchised system, plaintiff and other franchisors may be forced to alter their way of doing business, to the detriment of the consuming public. In addition, if this covenant is not enforced, defendants will continue to mislead the public, unfairly compete with plaintiff's authorized area franchisees, unfairly capitalize on plaintiff's trade secrets and unfairly take advantage of plaintiff's goodwill. Thus, the public interest will be served by entry of a preliminary injunction.

III. Conclusion

Because plaintiff has established all four elements needed to obtain a preliminary injunction, this court will grant plaintiff's motion for a preliminary injunction. Defendants shall immediately comply with this Order, and the injunction shall run one year from the date defendants begin compliance. Baskin-Robbins, Inc., v. Golde, No. 5:99-cv-102, 2000 WL 35536665 (E.D.N.C. May 25, 2000) (Britt, J.) (holding that injunction begins with date of court order because "The court believes that, to allow defendants to ignore their covenant not to compete and then to escape the consequences of that covenant while plaintiffs attempt to enforce it through the judicial process, would provide a windfall to defendants and unnecessarily penalize plaintiffs.")

## ORDER

IT IS, THEREFORE, ORDERED that plaintiff's Motion for a Preliminary Injunction (#2) is GRANTED and defendants ORANGE RACING, LLC and ROBERT TOLLENAAR, and all persons and entities in active concert or participation with them who receive actual notice of such Preliminary Injunction, shall:

> CEASE and REFRAIN, for a period of one year from the date they begin compliance with such covenant not to compete, from directly or indirectly either directly or indirectly owning, operating, advising, being employed by, or having any interest in any business performing tune-up services, brake services, or lubrication and oil change services within a radius of twenty (20) miles of Center No. 4161.

Such injunction shall run one year from the date defendants ORANGE RACING, LLC and

**ROBERT TOLLENAAR** begins compliance with such injunction.

Signed: September 10, 2012

Title of Signing Officer
United States District Court